IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDERO P. MOON,                                    Case No. 3:10-cv-00616-HU

             Petitioner,            FINDINGS AND RECOMMENDATION

   v.

RICK COURSEY,

             Respondent.


C. Renee Manes
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, OR 97204

    Attorney for Petitioner

Ellen Rosenblum
Attorney General
Andrew Hallman
Assistant Attorney General
Department of Justice
1162 Court Street N.E.
Salem, OR 97301-4096

    Attorneys for Respondent

///

///

///

1 -- FINDINGS AND RECOMMENDATION

HUBEL, Magistrate Judge

Petitioner, currently an inmate at Snake River Correctional Institution, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254.  For the reasons set forth below, his amended petition (#13) should be denied, and this proceeding dismissed, with prejudice.

## BACKGROUND

On August 20, 2000, Wayne Olson contacted Jessica Rydman, an exotic dancer and prostitute, and requested that she perform services for him in his home.  After Ms. Rydman left the residence, she contacted her boyfriend Calvin Davis (age 23) and told him that she had been in Olson's home in the West Hills of Portland, and that he had a lot of money, jewelry, and maybe a safe.  Davis decided to rob Olson, with the help of Rydman and petitioner (age 17).

Rydman, Davis, and petitioner returned to Mr. Olson's home. When Olson opened the door to Rydman, petitioner and Davis forced their way into the house and ordered Olson to the floor.  Mr. Olson was held at gunpoint during the course of the robbery.  At some point, Mr. Olson was blindfolded.  Davis, Rydman, and petitioner filled pillow cases with Mr. Olson's belongings.  During the course of the robbery, Mr. Olson requested a drink of water, and asked whether he was going to be killed.  Rydman provided him a drink of water, but Mr. Olson was left to contemplate his fate.

As Davis and Rydman exited the house, Davis said to petitioner that he knew what he had to do.  Petitioner shot Mr. Olson in the back of the head from a distance of 3-4 feet.  According to an investigative report, petitioner told police that "he didn't feel anything when he shot Mr. Olson, 'It's not like I was happy I did it, but I didn't feel bad about it.'"  Resp. Exh. 196 at 3; see also TR. Vol. II at 25.  On August 23, 2000, Mr. Olson's wife returned home from a business trip and discovered her husband's body.

Both Rydman and petitioner turned themselves into police, and made multiple statements to police providing the details of the murder and their involvement.  On October 6, 2000, petitioner was charged with six counts of Aggravated Murder, Robbery in the First Degree with a Firearm, Burglary in the First Degree with a Firearm, and Kidnapping in the First Degree with a Firearm.  Resp. Exh. 102.

On May 20, 2002, petitioner signed a plea agreement wherein he agreed to plead guilty to one count of Aggravated Murder (count 1 - murder in the course of committing the crime of Robbery in the First Degree) and Kidnapping in the First Degree with a Firearm (count 12).  Resp. Exh. 103.  The plea agreement, provides that the **maximum** possible sentence for both counts is "life," and the **minimum** sentence for kidnapping is 90 months.  Resp. Exh. 103.  The attached "settlement agreement," also signed by petitioner on May 20, 2002, sets forth the agreement of the parties and requires

petitioner to cooperate with the District Attorney's Office and truthfully testify at any trials of his co-defendants. Resp. Exh. 198 at 4-7. In exchange for petitioner's cooperation, the State of Oregon agreed to a sentence which would permit petitioner's eventual release on parole:

> In return for Medero Prince Moon completing each and every obligation imposed on him by this agreement, the State of Oregon agrees as follows:
>
> A.    Medero Prince Moon shall enter guilty pleas to Counts 1 and 12 of the indictment charging Aggravated Murder and Kidnapping in the First Degree with a Firearm, and a no contest plea to Assault in the Second Degree in Circuit Court case number C02-05-33164, DA 1295591.[1]
>
> B.    He shall be sentenced to 70 months on the Assault in the Second Degree case.
>
> C.    Counts 1 and 12 and the remaining counts of the indictment shall be set over for disposition following the conclusion of the cases against the co-defendants.
>
> D.    Following the conclusion of those cases, if Medero Moon has complied with each and every requirement of this agreement, he will be sentenced to life with the possibility of parole after 30 years on Count 1 charging Aggravated Murder. That sentence will run consecutively to 50 months of the Assault in the Second Degree sentence. The remaining counts of the indictment, other than Count 12, will be dismissed. Count 12 will be setover to a future date to be determined by the Court and will in any event be reviewed by the Court within 5 years. *If*

---

[1] While in custody, petitioner committed the crime of Assault in the Second Degree. That crime was charged in Case No. KC02-05-33164, and became a part of the settlement negotiations in this case. The two cases were consolidated for purposes of appeal and post-conviction relief.

> *Medero Prince Moon ever violates any term of this*
> *agreement, the Court will set Count 12 for*
> *sentencing and will be free to impose any*
> *consecutive sentence permitted by law consecutive*
> *to the sentence imposed on Count 1 and the Assault*
> *in the Second Degree case.*

Id. at 3 (emphasis added).

Ultimately, petitioner breached the negotiated plea agreement
by refusing to testify against Calvin Davis. See Resp. Exh. 161 &
TR Vol. III at 12-13.   On June 16, 2003, a Presentence
Investigation Report was prepared recommending a consecutive,
upward departure sentence of 230 months on the kidnapping count.
Resp. Exh. 146 at 15, see also Exh. 150.   On July 10, 2003,
petitioner was sentenced to a term of life, with the possibility of
parole in 30 years, for Aggravated Murder, and a consecutive 230-
month upward departure sentence for Kidnapping in the First Degree
with a Firearm (based on defendant being on supervision at the time
of the offense).   Resp. Exh. 101.[2]

Petitioner filed a direct appeal raising three unpreserved
Blakely-related claims challenging the departure and consecutive

---

[2] In the interim, co-defendant Calvin Davis was convicted by
a jury of Aggravated Murder (3 counts), Felony Murder (3 counts),
Robbery in the First Degree, Burglary in the First Degree,
Kidnapping in the Second Degree, Unauthorized Use of a Vehicle (2
counts), and Felon in Possession of a Firearm.  The aggravated
murder counts merged for sentencing, and the Felony Murder counts
merged with the robbery, burglary, and kidnapping convictions for
sentencing.  Davis was sentenced to life imprisonment, without
the possibility of parole.  See Smith v. Nooth, 2:11-cv-01101-BR
(Resp. Exh. 101).

nature of his sentences.  The Oregon Court of Appeals initially held that petitioner's assignments were plain error reviewable on appeal.  However, on reconsideration the court held that none of petitioner's assignments constituted "plain error" reviewable on appeal.  The Oregon Supreme Court denied review.  State v. Moon, 203 Or.App. 586, 126 P.3d 4, withdrawn on recons., 207 Or.App. 402, 142 P.3d 105, rev. denied, 342 Or. 46 (2006).

Petitioner subsequently sought state post-conviction relief challenging the constitutionality of his plea, the effectiveness of trial and appellate counsel, and trial court error.  The post-conviction court denied relief (with the exception that petitioner's term of post-prison supervision on the kidnapping charge was reduced from 36 months to 10 months).  Resp. Exh. 213. Petitioner appealed, raising a single assignment of error that trial counsel was ineffective for advising petitioner to plead guilty to Kidnapping in the First Degree because, as a matter of law, the facts of the case did not constitute kidnapping.  Resp. Exh. 214.  In a lengthy decision, the post-conviction court denied relief.  The Oregon Court of Appeals summarily affirmed, and the Oregon Supreme Court denied review.  Resp. Exhs. 218 & 219.

In the instant proceeding, petitioner raises eight grounds for relief containing numerous subparts. Respondent moves the court to deny habeas relief on the basis that all but one ground are procedurally defaulted, and the state court's decision on the

remaining claim is entitled to deference.  Petitioner argues that his procedural default should be excused because (1) he is actually innocent of Kidnapping in the First Degree as defined in <u>State v. Wolleat</u>, 338 Or. 469, 111 P.3d 1131 (2005);[3] and (2) post-conviction counsel was constitutionally ineffective in failing to raise Ground for Relief One, ¶¶ 9(H) and 9(M).

## DISCUSSION

### I.    Procedural Default/Actual Innocence.

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief.  28 U.S.C. § 2254(b)(1); <u>Jackson v. Roe</u>, 425 F.3d 654, 657-58 (9th Cir. 2005).  A state prisoner satisfies the exhaustion requirement by fairly presenting his claims to the appropriate state courts at all appellate stages afforded under state law.  <u>Casey v. Moore</u>, 386 F.3d 896, 915-16 (9th Cir. 2004); <u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).  Habeas review of procedurally defaulted claims is barred unless the petitioner

---

[3] In <u>Wolleat</u>, the Oregon Supreme Court held that moving a victim from one room to another while committing another crime does not, by itself, satisfy the element of kidnapping (which requires that the defendant intends to interfere substantially with the victim's liberty).  The defendant must have either intended to move the victim a greater distance than he did, or to transport the victim to a place of confinement.  338 Or. at 478; <u>see also</u> <u>State v. Zweigart</u>, 344 Or. 619, 636-37, 188 P.3d 242 (2008).

demonstrates cause for the procedural default and actual prejudice, or that the failure to consider the claims will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991); Smith v. Baldwin, 510 F.3d 1127, 1139 (9th Cir. 2007).

Petitioner procedurally defaulted all but one of his grounds for relief. As outlined above, the three grounds raised on direct appeal were rejected by the state appellate courts on the procedural basis that they were not preserved at trial. On collateral review, petitioner raised only one ground on appeal from the denial of post-conviction relief. Hence, all of petitioner's grounds for relief, except his claim that trial counsel was ineffective for advising him to plead guilty to Kidnapping in the First Degree (Amended Petition, Claim III, ¶ 9(D)), are procedurally defaulted. Petitioner offers no argument to the contrary. However, petitioner seeks to excuse his procedural default on the basis that he is actually innocent of Kidnapping in the First Degree.

The "miscarriage of justice" exception to procedural default is limited to a habeas petitioner who can show that a constitutional violation has probably resulted in the conviction of one who is actually innocent. Schlup v. Delo, 513 U.S. 298, 327 (1995). A showing of "actual innocence" under Schlup is not itself a constitutional claim, but rather a "gateway through which a

habeas petitioner must pass to have his otherwise barred constitutional claim[s] considered on the merits." Id. at 315 (internal quotations omitted); Smith, 510 F.3d at 1139-40.

To demonstrate "actual innocence," a petitioner must demonstrate actual, as opposed to legal, innocence. The Court explained in Bousley v. United States, 523 U.S. 614, 623-24 (1998):

> It is important to note in this regard that "actual innocence" means factual innocence, not mere legal insufficiency. In other words, the Government is not limited to the existing record to rebut any showing that petitioner might make. Rather, on remand, the Government should be permitted to present any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy.

(citations omitted).

Generally, a petitioner must present "new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." Schlup, 513 U.S. at 324; Calderon v. Thompson, 523 U.S. 538, 559 (1998); Griffin v. Johnson, 350 F.3d 956, 961 (9th Cir. 2003). The petitioner must demonstrate that, in light of all the evidence (old and new), it is more likely than not that no reasonable juror would have convicted him of kidnapping. Schlup, 513 U.S. at 329; Bousley, 523 U.S. at 623; Smith, 510 F.3d at 1140.

In the instant proceeding, however, petitioner offers no new evidence demonstrating his innocence. Rather, petitioner argues

that his innocence is apparent based upon the facts known at the time he entered his plea (given the Oregon Supreme Court's holding in Wolleat). In Bousley, the Supreme Court addressed the actual innocence exception within the context of a guilty plea by a *federal* defendant. The Court held that "[i]n cases where the government has forgone more serious charges in the course of plea bargaining, *petitioner's showing of actual innocence must also extend to those charges*." 523 U.S. at 624 (emphasis added). This showing is necessary to prevent a petitioner from raising a procedurally defaulted challenge to a sentence he bargained for, while escaping punishment for dismissed counts that he actually committed. United States v. Caso, 2013 WL 3762901 *7 (D.C.Cir. July 19, 2013).

The Ninth Circuit has reiterated this holding, with little discussion, in several guilty plea cases. In United States v. Benboe, 157 F.3d 1181, 1184 (9th Cir. 1998), the Ninth Circuit relied upon Bousley in remanding for an evidentiary hearing to determine whether the federal prisoner was actually innocent of any more serious dismissed charges. Similarly, in Jaramillo v. Stewart, 340 F.3d 877, 883 (9th Cir. 2003), a § 2254 proceeding, the Ninth Circuit remanded for an evidentiary hearing because the petitioner, who had pled guilty to First Degree Murder, had presented sufficient evidence, if credible, to prove his actual innocence. See also United States v. Avery, 719 F.3d 1080, 1085

10 -- FINDINGS AND RECOMMENDATION

n.4 (9th Cir. 2013); <u>Spencer v. Hill</u>, 2003 WL 25279367 (D.Or. Dec. 30, 2003). More recently, the Ninth Circuit noted the "potential incongruity between the purpose of the actual innocence gateway . . . and its application to cases involving guilty (or no contest) pleas." <u>Smith</u>, 510 F.3d at 1140 n.9. However, the court proceeded to assume without deciding that the actual innocence gateway is available to a state prisoner who pleads guilty. <u>Id.</u>

Based on the foregoing, I conclude that a state prisoner who engages in plea negotiations, and ultimately enters a guilty plea to some but not all charges in an indictment, may demonstrate actual innocence to overcome a procedural default provided that, if more serious charges were dismissed by the state during plea negotiations, the petitioner's showing of actual innocence must extend to those charges. <u>See e.g.</u> <u>Bousley</u>, 523 U.S. at 624; <u>Benboe</u>, 157 F.3d at 1184; <u>Jaramillo</u>, 340 F.3d at 883; <u>Spencer</u>, 2003 WL 25279367 *1.

It is worthy of note, that two circuit courts have opined that the logic of <u>Bousley</u> extends to charges dismissed during plea negotiations which are "equally serious," because it is only when the state dismisses a *less* serious crime during plea negotiations that there is "a strong reason to believe that the defendant was punished more severely by virtue of having pleaded guilty to [a] count later learned to be invalid." <u>Lewis v. Peterson</u>, 329 F.3d 934, 937 (7th Cir. 2003) (emphasis added); <u>Caso</u>, 2013 WL 3762901 *5

& n.3; see also Alcock v. Spitzer, 349 F.Supp.2d 630, 637 (E.D.N.Y. 2004); but see United States v. Johnson, 260 F.3d 919, 921 (8th Cir. 2001). I find the reasoning in those cases persuasive, although their application to this case is not necessarily determinative.

In the instant proceeding, petitioner was charged with six counts of Aggravated Murder (premised upon allegations that petitioner committed the murder during the course of, or in order to conceal, a robbery, burglary, and kidnapping), and one count each of Robbery, Burglary, and Kidnapping in the First Degree (all Class A Felonies). See Resp. Exh. 102; O.R.S. 163.225. 163.235, & 164.415.

As outlined above, petitioner pled guilty to only one count of Aggravated Murder (murder during the course of a *robbery*), and one count of Kidnapping in the First Degree. Assuming that petitioner can prove that he is actually innocent of kidnapping by virtue of the decision in Wolleat,[4] the dismissed charges of robbery and burglary arguably are "equally serious" to kidnapping.[5] More

---

[4] See Bousley, 523 U.S. at 624; see also Alaimalo v. United States, 645 F.3d 1042, 1047 (9th Cir. 2011) (holding in the context of a § 2241 proceeding, that "[a] petitioner is actually innocent when he was convicted for conduct not prohibited by law"); Avery, 719 F.3d at 1085 (same); Spencer, 2003 WL 25279367 *1 (petitioner can establish actual innocence in § 2254 if conduct charged in the indictment is not prohibited by the statute he was convicted of violating).

[5] This is true if the minimum and maximum *statutory* sentences are compared. However, respondent concedes that

(continued...)

importantly, the dismissed counts of Aggravated Murder (premised upon the commission and/or concealment of robbery and burglary (counts 2, 4, & 5)) are "more serious" than the kidnapping count given the fact that they carried a potential sentence of life, without the possibility of parole.  See Respondent's Supp. Brief (#48), Appx. A; see also Resp. Exh. 133.

Hence, because petitioner has not demonstrated that he is actually innocent of the three counts of Aggravated Murder dismissed by the State in the course of the plea negotiation, he fails to satisfy the Schlup showing of "actual innocence" sufficient to overcome his procedural default.   In short, petitioner's admission that he robbed and burglarized Wayne Olson during the course of the murder[6] is sufficient to defeat any claim that a fundamental miscarriage of justice will occur if this court fails to consider petitioner's procedurally defaulted claims.

In so holding, I conclude that the question whether more serious charges were dropped during plea negotiations does not require a showing that petitioner's sentence could now be *reformed* so as to result in a lengthier sentence.  Rather, the relevant inquiry is whether more serious charges (measured by the applicable

---

[5](...continued)
kidnapping carried a higher *guideline* range than robbery or burglary.  Resp. Supp. Brief at 7, n.5.

[6]  See Resp. Exh. 187.

guideline range *or* statutory sentence for kidnapping, and the statutory sentence for Aggravated Murder) were dropped during the course of plea negotiations.  See Caso, 2013 WL 3762901 *7-*8 (using Sentencing Guideline ranges); Alcock, 349 F.Supp.2d at 637 (using statutory range).  In this case, the answer is yes.

Further, I reject petitioner's assertion that because he could not receive multiple life sentences for Aggravated Murder, there are no "more serious" charges to kidnapping that were dismissed. Although petitioner correctly notes that a conviction for multiple counts of Aggravated Murder merge into a single judgment under Oregon law,[7] that does not negate the fact that petitioner originally was charged with six counts of Aggravated Murder, based upon the existence of *alternate* aggravating factors, and faced a maximum sentence of life, without the possibility of parole.  Had petitioner proceed to trial and been convicted of six counts of Aggravated Murder, those convictions would merge into a single judgment, but the alterative aggravating factors would be *reflected in the judgment*.  State v. Bowen, 340 Or 487, 527, 135 P.3d 272 (2006).  The importance of depicting a defendant's full extent of criminal involvement in a judgment for Aggravated Murder was explained by the Oregon Supreme Court in State v. Barrett, 331 Or. 27, 36-37, 10 P.3d 901 (2000):

---

[7] State v. Barrett, 331 Or. 27, 35-36, 10 P.3d 901 (2000).

Each of the three theories of aggravated murder at
issue here is one on which the jury had to agree
unanimously.  If the trial court were to enter a
conviction on only one count, and dismiss the other two,
it always would be possible that an appeal would result
in a reversal, for insufficient evidence, of the count
that was selected to serve as the basis for conviction.
With the other two counts dismissed, defendant would be
able to argue that he was entitled to a judgment of
acquittal on the charge of aggravated murder.  Such an
outcome would be inappropriate, if there were evidence to
sustain defendant's guilt under either of the other two
counts, but there is no obvious mechanism for "reviving"
counts that have been dismissed.

(citations omitted).

In sum, although multiple convictions of Aggravated Murder
merge for sentencing under Oregon law, the State of Oregon's
dismissal of five counts of Aggravated Murder during plea
negotiations constitutes a concession on charges that were "more
serious" than kidnapping.  Because petitioner's showing of actual
innocence does not extend to those charges, his procedural default
should not be excused under the reasoning in <u>Schlup</u> and <u>Bousley</u>.

## II.  <u>Procedural Default/Ineffective Assistance of Post-Conviction Counsel</u>.

Petitioner also raises a belated argument that his procedural
default of available state remedies should be excused on the basis
that the default was caused by ineffective assistance of *post-
conviction* counsel.  Petitioner relies upon the recent holding in
<u>Martinez v. Ryan</u>, 132 S.Ct. 1309 (2012).  There, the Supreme Court
held that ineffective assistance of counsel may excuse the
procedural default of a claim of ineffective assistance at trial

provided that (1) the claim of ineffective assistance is substantial; (2) the "cause" consisted of there being no counsel or ineffective counsel at the state collateral review proceeding; (3) the collateral proceeding is the initial review proceeding for the ineffective assistance of trial counsel claim; and (4) state law requires that the ineffective assistance of trial counsel claim be raised in the initial-review collateral proceeding. 132 S.Ct. at 1318-19; Trevino v. Thaler, 133 S.Ct. 1911, 1918 (2013); Detrich v. Ryan, 2013 WL 4712729 *5 (9th Cir. Sept. 3, 2012).

When determining whether an ineffective assistance of counsel claim is "substantial" under the first requirement of Martinez, this court must determine if the claim has "some merit." Martinez, 132 S.Ct. at 1318. Like the standard for issuing a certificate of appealability, "substantiality" requires the petitioner to show that "*reasonable jurists could debate* whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Detrich, 2013 WL 4712729 *6 (internal quotations omitted, emphasis added).

Petitioner argues that the reasoning in Martinez must be applied to excuse the procedural default of his claims that trial counsel was ineffective in failing to (1) seek specific enforcement of the 90-month sentence that was part of the plea colloquy; and (2) challenge the plea as not knowing, intelligent, or voluntary

because the sentence was so much greater than what the trial court advised.    Pet.'s Supplemental Brief (#60) at 11-12; Amended Petition (#13), Claim One, ¶¶ 9(h) & 9(m).    Whether this court reviews petitioner's ineffective assistance claims to determine if they are "substantial" under Martinez, or de novo on the merits, habeas relief is not warranted.    See 28 U.S.C. § 2254(b)(2) (permitting court to deny petition on the merits notwithstanding failure to exhaust).

A claim of ineffective assistance of counsel requires petitioner to prove that counsel's performance fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Bell v. Cone, 535 U.S. 685, 695 (2002); Williams v. Taylor, 529 U.S. 362, 390-91 (2000); Strickland v. Washington, 466 U.S. 668, 687-88 (1987).

To prove deficiency of performance, petitioner "'must show that counsel's representation fell below an objective standard of reasonableness.'" Taylor, 529 U.S. at 390-91 (quoting Strickland, 466 U.S. at 688). "To establish prejudice [petitioner] 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Williams, 529 U.S. at 391 (quoting Strickland, 466 U.S. at 694).

The Supreme Court has applied this two-part analysis to ineffective-assistance claims arising out of the plea process. Hill v. Lockhart, 474 U.S. 52, 59 (1985); Lafler v. Cooper, 132 S.Ct. 1376, 1384 (2012). The prejudice prong of Strickland in the plea context requires a petitioner to "show the outcome of the plea process would have been different with competent advice." Lafler, 132 S.Ct. at 1384. To satisfy this standard, petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, he would not have pled guilty and would have insisted on going to trial. Hill, 474 U.S. at 59; Lafler, 132 S.Ct. at 1384.

Petitioner argues that when he pled guilty to kidnapping, he did so based on the state judge's statement that the most petitioner could serve on the charge, even if he refused to testify against Davis, was 90 months consecutive to the murder charge. Pet.'s Brief and Reply at 11. Petitioner concludes that trial counsel's failure to seek specific enforcement of the 90-month sentence, or to challenge petitioner's plea, "had a substantial and injurious effect" on his sentence. Pet.'s Supp. Brief at 12 (citing Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)(setting forth harmless error standard for trial court error)).[8]

---

[8] Petitioner's reliance upon the harmless error standard of Brecht is misplaced. This court does not conduct a separate Brecht analysis to ineffective assistance of counsel claims which

(continued...)

As outlined above, petitioner's plea petition provides that the maximum sentence for Aggravated Murder and kidnapping is life, and the *minimum* sentence for kidnapping is 90 months.  Prior to entering his plea, petitioner represented to the court that he read both the plea agreement and the settlement agreement.  TR. Vol. III at 36.  The court explained to petitioner the terms of the plea agreement, and the ramifications of its breach:

> THE COURT:  Now, the pleas in this case will be guilty pleas to Count 1, Aggravated Murder, and Count 12, Kidnap in the First Degree with a Firearm.  *Are you aware that the maximum possible sentence that can be imposed is a life sentence in prison with fines totaling $300,000?*
>
> THE DEFENDANT: Yes.
>
> * * * * *
>
> THE COURT: * * * *As part of the agreement in this case that you shall receive on Count 1, the sentence of life imprisonment with possibility of an eligibility to be considered for parole after thirty years have been served,* and with the understanding that while you are pleading guilty to Kidnap in the First Degree With a Firearm today, that that will be dismissed at the conclusion of five years should you have complied with all conditions of this agreement.
>
> * * * * *
>
> THE COURT: *[I]f you fail to fulfill each and every condition of this agreement as stated in paragraph seven, then the State of Oregon for the District Attorney's Office may proceed to the sentencing phase on the charge*

---

[8](...continued)
are governed by the standards set forth in <u>Strickland</u>.  <u>Pirtle v. Morgan</u>, 313 F.3d 1160, 1169 n.5 (9th Cir. 2002); <u>Jackson v. Calderon</u>, 211 F.3d 1148, 1154 n.2 (9th Cir. 2000).  Hence, this court applies the <u>Strickland</u> test as set forth above.

*of Aggravated Murder and seek a sentence of life without the possibility of release or parole. * * * [I]s that your understanding Mr. Moon?*

THE DEFENDANT: Yes.

* * * * *

THE COURT: * * * Now the State's obligation to comply with all of those conditions is that as already stated, you will be sentenced to 70 months on the Assault in the Second Degree, that Counts 1 and 12, Aggravated Murder and Kidnapping in the First Degree counts will be set over for dispositional or for sentencing following conclusion of the cases of the co-defendants. *If you have complied with each condition, then you will be sentenced to life with the possibility of parole after 30 years on Count 1, that's the count charging Aggravated Murder. * * **

The remaining counts of the indictment other than Count 12, the kidnapping charge, will be dismissed. The disposition of Count 12 will be set over to a future date to be determined by the Court as to whether there should be a sentence imposed or that matter should be dealt with otherwise. * * * [A]t the very furthest point five years from the date of the taking of this plea.

*If, on the other hand, you violate the terms of the agreement, the Court will then set sentencing on Count 12 and will be free to impose a consecutive sentence which would be a 90 month sentence consecutive to the time imposed on Count 1.*

TR. Vol. III at 38-44 (emphasis added). Hence, the state court record clearly demonstrates that petitioner was advised that he faced a sentence of life, without the possibility of parole, in the event that he breached the plea agreement. Trial counsel attested that he felt petitioner had a full understanding of the ramifications of the plea bargain. Resp. Exh. 210 at 4.

20 -- FINDINGS AND RECOMMENDATION

Upon petitioner's subsequent breach of the plea agreement, the state judge did *not* sentence petitioner to life, without the possibility of parole, for Aggravated Murder.  Rather, the court imposed the sentence petitioner had bargained for in the plea agreement--life, *with the possibility of parole in 30 years*.  <u>See</u> Resp. Exh. 194 at 34 (noting that despite petitioner's breach, the state did not ask for anything more than life, with the possibility of parole in 30 years).  However, the court imposed a 230-month consecutive sentence for kidnapping, resulting in a true life sentence.

The foregoing record demonstrates that whether petitioner received (1) a life sentence, without the possibility of parole, for Aggravated Murder; or (2) a life sentence, with the possibility of parole, for Aggravated Murder, and a consecutive 230-month sentence for kidnapping, he received the true life sentence that he was advised the state would seek in the event of a breach (albeit through the imposition of consecutive and departure sentences).  Because petitioner knew that he faced a true life sentence in the event he breached the plea agreement, he has failed to demonstrate under <u>Strickland</u> that there is a reasonable probability that, but for counsel's ineffectiveness to ensure he received a 90-month sentence for kidnapping, he would not have pled guilty.  Petitioner also has failed to demonstrate that the claim is plausible or has "some merit."  Accordingly, petitioner's ineffective assistance of

counsel claims set forth in Ground One, ¶¶ 9(H) & 9(M) are not
"substantial" under <u>Martinez</u> and, alternatively, do not warrant
habeas relief on the merits.   Because petitioner has made
absolutely no showing as to what evidence he could develop in an
evidentiary hearing to support his claims, his request for an
evidentiary hearing is denied.

**III. <u>Trial Counsel's Advice to Plead Guilty to Kidnapping</u>.**

In Ground for Relief One, ¶ 9(D), petitioner alleges that
trial counsel was ineffective in advising petitioner to plead
guilty to the crime of Kidnapping in the First Degree.   In
rejecting this claim, the post-conviction court issued an extensive
opinion which provided as follows:

**FINDINGS OF FACT**

12.  The court finds that there were not enough facts, at
least in the police reports, to support the kidnapping
charge under the law as it currently stands.

13.  Prior law was not so settled, and at the time of the
entry of the plea, a legal issue existed as to what
constituted kidnapping.   That unsettled issue was not
something that trial counsel could ignore and trial
counsel could not go to trial under the assumption that
a jury would not find the evidence to support kidnapping.

14.  Trial counsel did not have the opportunity to
contest the kidnapping charge at trial because petitioner
chose to enter into the negotiated settlement rather than
go to trial.   If there had been a trial, trial counsel
would have made the argument that the evidence did not
support the charge of Kidnapping.

15.  Petitioner may have pled guilty to the kidnapping
charge, even though he thought he was not guilty, in
order to access the other substantial benefits provided

by the negotiated settlement. Trial counsel was able to achieve results through negotiation that benefitted petitioner, perhaps beyond the dismissal of the kidnapping charge, despite the paucity of evidence regarding that kidnapping charge.

16. Trial counsel was not inadequate for not instructing petitioner to proceed to trial and contest the kidnapping charge, as well as the other *equally serious and more serious charges*.

\* \* \* \* \*

**CONCLUSIONS OF LAW**

1. Based on the findings of fact set forth above, in the underlying criminal proceedings resulting in petitioner's convictions, petitioner was not denied the right to assistance of counsel, as guaranteed by either the United States Constitution and as articulated by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), or the Constitution of the State of Oregon.

Resp. Exh. 212 (emphasis added).

The post-conviction court's conclusion that trial counsel was not ineffective during the course of plea negotiations and sentencing is neither contrary to, nor an unreasonable application of clearly established Federal law. See 28 U.S.C. § 2254(d)(1). As recognized by the post-conviction court, effective trial counsel undoubtedly would have contested the kidnapping charge at trial. However, trial counsel was not constitutionally ineffective for negotiating a settlement of all charges that conferred substantial benefit on petitioner (including the possibility of parole, and the eventual dismissal of the kidnapping charge).

23 -- FINDINGS AND RECOMMENDATION

Those benefits were lost, not as the result of ineffective assistance of counsel, but due to petitioner's refusal to testify against Calvin Davis.  Petitioner has failed to present any evidence to establish prejudice, i.e., that, but for counsel's advice to pled guilty to kidnapping, he would have rejected the plea agreement; proceeded to trial on six counts of Aggravated Murder, as well as charges of burglary, robbery, and kidnapping; and tried to mount a defense in the face of his pretrial admissions made to police.  For all of these reasons, I conclude that habeas relief is not warranted on petitioner's exhausted claim of ineffective assistance of counsel.

## CONCLUSION

Based on the foregoing, petitioner's amended habeas corpus petition (#13) and request for an evidentiary hearing should be DENIED, and this proceeding DISMISSED, with prejudice.

A certificate of appealability should be GRANTED as to whether petitioner has demonstrated cause and prejudice or actual innocence sufficient to overcome his procedural default of Ground for Relief Five (freestanding claim of actual innocence), and whether trial counsel rendered ineffective assistance of counsel as set forth in Ground for Relief One, ¶ 9(D).

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due September 27, 2013.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due October 15, 2013.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 9th day of September, 2013.

/s/ Dennis J. Hubel

_____
Dennis J. Hubel
United States Magistrate Judge

25 -- FINDINGS AND RECOMMENDATION