IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDERO P. MOON,                                    3:10-cv-00616-BR

                Petitioner,          OPINION AND ORDER

v.

RICK COURSEY,

                Respondent.

_____

**LISA C. HAY**
Federal Public Defender
**C. RENÉE MANES**
Assistant Federal Public Defender
101 S.W. Main Street, Suite 1700
Portland, OR 97204

        Attorneys for Petitioner

**ELLEN F. ROSENBLUM**
Attorney General
**ANDREW HALLMAN**
Assistant Attorney General
Department of Justice
1162 Court Street N.E.
Salem, OR 97301-4096

        Attorneys for Respondent

**BROWN, Judge.**

Petitioner Medero P. Moon, an inmate at the Oregon State Penitentiary, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254.  In his Fifth Claim for Relief, Petitioner alleges his conviction for Kidnapping in the First Degree violates the Fifth and Fourteenth Amendments to the United States Constitution because there was insufficient evidence to convict him and he is actually innocent of that offense.  Pet'r's Am. Habeas Pet. (ECF No. 13) at 14.[1]

This Court previously denied habeas relief on the basis, *inter alia*, that Petitioner procedurally defaulted his available state remedies and was precluded from demonstrating actual innocence to excuse his procedural default.  Findings and Recommendation (ECF No. 65) & Order (ECF No. 69).  The Ninth Circuit reversed, holding Petitioner is not precluded from making a gateway showing of actual innocence and remanded to permit Petitioner to do so. *Moon v. Coursey*, No. 13-36155, Mem. Op. (ECF No. 73) at 1-3.  For the reasons that follow, this Court

---

[1] Although Petitioner originally sought habeas relief on multiple grounds, Petitioner pursues on remand only his Fifth Claim for Relief.  *See* Pet'r's Supp. Br. on Remand (ECF No. 89); Resp't Response (ECF No. 94) at 1.

concludes on remand that Petitioner has made a gateway showing of actual innocence[2] and that habeas relief is warranted.

**BACKGROUND**

**I.    The Crime**

On August 20, 2000, Petitioner, Calvin Davis, and Jessica Rydman entered the home of Wayne Olson with the intent to commit a robbery.  During the course of the robbery Petitioner killed Olson by shooting him in the back of the head at close range. Petitioner and Rydman subsequently surrendered to police and made incriminating statements.  Gresham Police Detective Mike McGowen summarized Rydman's statements concerning the details of the crime as follows:

> Ms. Rydman stated . . . she went up to the front door as Calvin and Medero hid around the corner. When the door opened Mr. Olson appeared to be happy to see Jessica and started to let her in. She stated that both Calvin Davis and Medero Moon then rushed the front door and forced their way into the residence. Calvin and

---

[2] In the parties' original briefing, Respondent argued all of Petitioner's claims, except one ineffective assistance of counsel claim, were procedurally defaulted.  Resp't Resp. to Pet. (ECF No. 17) at 4, 7-8.  Petitioner responded that the default was excused based on his gateway showing of actual innocence. *See* Pet'r's Br. in Supp. (ECF No. 22) at 10-11.  On remand, however, the parties appear to agree that a claim of actual innocence is not cognizable in state court.  *See* Pet'r's Resp. to Resp't Sur-Reply (ECF No. 102) at 3 n.1; Jt. Status Report (ECF No. 82) at 3.  Accordingly, Petitioner's gateway showing of actual innocence is relevant only to the extent that Petitioner's Fifth Claim for Relief is construed as a defaulted due process claim.  *See Infra* at 23-27.

> Medero started yelling at Mr. Olson to get down to the
> fucking ground.  Ms. Rydman stated when Medero came
> into the residence he had what appeared to be a 9mm
> handgun in his hand.  She stated he was pointing the
> gun at Mr. Olson and demanding him to go to the ground.
>
> * * *
>
> [J]ust prior to leaving the residence Medero Moon stood
> over the top of Mr. Olson and fired one shot down in the
> direction of Mr. Olson's body.

Resp't Exs. to Answer - Part A (ECF No. 20), Ex. 117 at 13.  *See
also* Resp't Exs. 119, 121, & 124.

Rydman estimated they were in Olson's house for one-half
hour.  Resp't Ex. 117 at 5-6.  With regard to the physical
location of Olson during the course of the robbery, Rydman told
police:

> Medero Moon held the gun to Mr. Olson's body and told
> him not to move.  Through the course of the half hour
> they were in the house the gun had been switched from
> Medero Moon into Calvin Davis' hands and Mr. Davis held
> the gun on Mr. Olson for a short period of time.  After
> some time had elapsed Medero Moon took the gun back
> from Calvin Davis . . . .
>
> * * *
>
>     Ms. Rydman stated Mr. Olson just laid on the
> ground and did no talking.  She stated his dog laid
> beside him and that she heard absolutely nothing come
> from Mr. Olson's mouth.  I asked if he was tied up and
> she stated he had his hands behind his back but she did
> not think he was actually tied up but that he did have
> something wrapped around his head.

*Id.* at 5-6.  In a subsequent interview a police detective
questioned Rydman about whether Olson was moved during the
robbery:

HL:  Did you ever see Mr. Olson resist or not cooperate
     with their orders?

Jr:  No.  The only time I really saw him is at the
     beginning and then hearing them telling him to get
     down.  And then I remember when I was taking the
     pillowcases [of Mr. Olson's property] out [he was]
     just laying still.

HL:  So from the whole time, from the time you met him
     at the door clear to the time he was killed you
     don't really remember him ever being moved other
     than laying right there?

JR:  No.

Resp't Ex. 128 at 4.

Petitioner conveyed a similar story to Multnomah County

Sheriff Detective Hollie Lincoln, which she summarized as

follows:

    Just as Mr. Olson answered the door, Medero held
his gun out, stepped forward and pushed Jessica
aside as she went through the doorway.  Calvin was right
behind Medero with his gun out.  They both yelled at
Mr. Olson to get on the floor and he complied.  Jessica
immediately ran to the other end of the house, with
Calvin following her and Medero guarding Mr. Olson at
gunpoint.

                    *  *  *

Calvin gave the 9mm back to Medero as they both stood
just outside the door while Medero held the screen door
open.  Calvin told Medero that he knew what he had to
do and that he had to kill the man. . . .  Medero went
back into the house and closed the door. He stood off
to the side of Mr. Olson, who was still face down and
blindfolded.  Medero says that he pointed his gun at
the back of Mr. Olson's head . . . when he fired.

Resp't Ex. 136 at 5-6.

A grand jury indicted Petitioner on charges of Aggravated Murder (six counts), Felony Murder (three counts), Robbery in the First Degree with a Firearm, Burglary in the First Degree with a Firearm, and Kidnapping in the First Degree with a Firearm. Resp't Ex. 102.  The Kidnapping charge provides as follows:

> [O]n or about August 20, 2000, in the County of Multnomah, State of Oregon, [Petitioner] did unlawfully and knowingly, without consent or legal authority, take **WAYNE E OLSON** from one place to another, with intent to interfere substantially with the said **WAYNE E OLSON's** personal liberty, and with the purpose of causing physical injury to **WAYNE E OLSON**, and during the commission of this felony, the [Petitioner] did use and threaten the use of a firearm, contrary to the statutes in such cases made and provided and against the peace and dignity of the State of Oregon.

*Id.* at 3-4 (emphasis in original).

## II.  Petitioner's Plea and Sentencing

On May 20, 2002, Petitioner signed a plea petition agreeing to plead guilty to one count of Aggravated Murder (murder in the course of committing the crime of Robbery in the First Degree) and Kidnapping in the First Degree with a Firearm.  Resp't Ex. 103 at 1.  With regard to the kidnapping charge, Petitioner admitted he unlawfully and knowingly took Olson from one place to another intending to substantially interfere with his personal liberty and cause physical injury to him.  *Id.* at 2.  *See also* Tr. (ECF No. 19), Vol. 3 at 30-31.  As part of the plea agreement Petitioner agreed to cooperate with the Multnomah County District Attorney's Office and to testify truthfully at all proceedings.

Resp't Ex. 198.  Had Petitioner had complied with the conditions
of the plea agreement, his Kidnapping conviction would have been
dismissed after five years.  Tr., Vol. 3 at 39.

Petitioner, however, breached the plea agreement by refusing
to testify against Calvin Davis.  *See* Resp't Exs. to Answer -
Part B (ECF No. 21), Ex. 187 at 1; Tr., Part C (ECF No. 87), Vol.
7 at 167-68.  Consequently, on July 10, 2003, Petitioner was
sentenced to a term of life with the possibility of parole in 30
years, for Aggravated Murder, and for a consecutive 230-month
upward departure sentence for Kidnapping in the First Degree.
Resp't Ex. 101.  The Oregon Court of Appeals affirmed without
opinion, and the Oregon Supreme Court denied review.  *State v.
Moon*, 126 P.3d 4 (Or. App.), *withdrawn on recons.*, 142 P.3d 105
(Or. App.), *rev. denied*, 148 P.3d 915 (Or. 2006).

## III. **Calvin Davis's Trial**

Calvin Davis was tried separately on charges of Aggravated
Murder (6 counts), Robbery in the First Degree, Burglary in the
First Degree, Kidnapping in the Second Degree, Unauthorized Use
of a Vehicle with a Firearm (2 counts), and Felon in Possession
of a Firearm.  Resp't Ex. 222.  Jessica Rydman testified on
behalf of the prosecution consistent with her previous statements
to police.  *See* Tr., Part C, Vol. 5 at 199.

Detective Hollie Lincoln testified to Petitioner's out-of-
court statements to police:

Mr. Olson answered the door.  Medero said he held his
gun out, stepped forward, pushed Jessica aside, and
went through the doorway and Calvin was right behind
him with his gun out, and they are both yelling at Mr.
Olson to get on the floor.  He said Mr. Olson complied
with them. . . .  Medero began guarding Mr. Olson at
gunpoint. . . .  Medero told us that he and Calvin
traded positions a few times guarding Mr. Olson at
gunpoint.

                     * * *

    . . . . And one of the times that he said that he
came back to guard Mr. Olson, he noticed that Calvin
had put a blindfold around Mr. Olson's head to cover
his eyes.

                     * * *

    And also during the time the three were searching,
apparently Mr. Olson had asked for a drink of water,
and Jessica got the water for him, and then Mr. Olson
asked if they were going to kill him. And Medero thinks
he told Mr. Olson just to be quiet, but nothing else
was said.

                     * * *

    . . . . Medero went back into the house. . . .  He
stood off to the side of Mr. Olson, who was still face
down and blind-folded. He said he pointed the gun at
the back of Mr. Olson's head . . . [and] fired one shot
. . . .

*Id.*, Vol. 7 at 177-81.

    Glenna Olson, the decedent's wife, testified to the location

of her husband's body when she discovered it:

[W]hen I went—there's two stairs up into the family
room.  And I know we have a big screen TV.  That's the
first thing you see when you step in.

                     * * *

> At that point, I didn't even see that Wayne was laying two
> feet in front of me on the floor.

Tr., Part B (ECF No. 86), Vol. 4 at 79-80. *See also* Resp't Ex. 192 (diagrams of the Olson home). Multnomah County Sheriff Deputy John Ahn confirmed Olson's body was "inside right by the front door" and testified he had to "step past him to go inside the house." Tr., Part B, Vol. 4 at 126-27, 131.

The jury found Davis guilty of three counts of Aggravated Murder, three counts of Felony Murder (a lesser included offense), Robbery in the First Degree, Burglary in the First Degree, Kidnapping in the Second Degree, two counts of Unauthorized Use of a Vehicle, and Felon in Possession of a Firearm. Resp't Ex. 220 at 4. The court imposed a sentence of life without the possibility of parole. *Id.* at 4-6; Tr., Part D (ECF No. 88)(Oct 11, 2002 proceedings) at 100-02.

## IV.  Petitioner's State Post-Conviction Proceeding

Petitioner subsequently sought state post-conviction relief raising several trial court errors and challenging the constitutionality of his plea and the effectiveness of trial and appellate counsel. With regard to his Kidnapping conviction, Petitioner raised a sufficiency of the evidence claim:

> Petitioner's convictions are void because
> Petitioner's right to proof beyond a reasonable doubt
> and to a fair and impartial trial and to Due Process of
> Law, Fundamental Fairness, and Equal Protection of the
> Laws . . . made applicable to the states by the 14th
> Amendment to the U.S. Constitution and *Jackson v.*

>          *Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L.Ed.2d 560
>          (1979), were substantially denied when Petitioner was
>          convicted of the crime of Kidnapping in the First
>          Degree despite the absence of any evidence to prove the
>          essential elements of the crime.

Resp't Ex. 115 at 5-6.

At the conclusion of the PCR hearing the court opined:

"[I]t's clear, based on the facts in this case, that there was

not factual support for [the] kidnapping conviction."  Resp't Ex.

211 at 37.  The court, nevertheless, denied PCR relief:

>          But just to make your record, I agree with you,
>     Mr. Simmons, that -- that [defense counsel] missed the
>     fact that there was not enough facts, at least in the
>     police reports, to support that.  I've done a lot of
>     plea petitions where attorneys say, hey, I'm interested
>     in pleading guilty, but my client doesn't think he's
>     guilty of this, and then we discuss, well, you know, is
>     that something you want to test if they're going to
>     dismiss the other charges.  They go, you know, forget
>     it, then.  The defendant goes, fine, dismiss those
>     other charges.  I'll plead to this one, even though I
>     think I'm not guilty of it, because I'm getting two
>     other charges dismissed.  So I don't think that's
>     grounds for post conviction.
>
>          And I've just said that, so if the Court of
>     Appeals disagrees with me, so be it, you'll find out.
>     Because I think you're correct that factually I don't
>     think that that supported the kidnapping conviction.
>
>                          * * *
>
>          So I'd just say that as, you know, as [an]
>     attorney I could say, hey, we can argue about this and
>     go to trial, maybe you'll lose, and maybe there will be
>     some more evidence at trial, other than what's in the
>     police reports.

*Id.* at 37-38.

In the PCR court's formal Findings of Fact and Conclusions of Law, the court reiterated its conclusion that the record evidence did not support a Kidnapping conviction:

> 12. The court finds that there were not enough facts, at least in the police reports, to support the Kidnapping charge under the law as it currently stands.
>
> 13. Prior law was not so settled, and at the time of the entry of plea, a legal issue existed as to what constituted kidnapping. That unsettled issue was not something that trial counsel could ignore and trial counsel could not go to trial under the assumption that a jury would not find the evidence to support kidnapping.
>
> 14. Trial counsel did not have the opportunity to contest the kidnapping charge at trial because petitioner chose to enter into the negotiated settlement rather than go to trial. If there had been a trial, trial counsel would have made the argument that the evidence did not support the charge of Kidnapping.
>
> 15. Petitioner may have pled guilty to the Kidnapping charge, even though he thought he was not guilty, in order to access the other substantial benefits provided by the negotiated settlement. Trial counsel was able to achieve results through negotiation that benefitted petitioner, perhaps beyond the dismissal of the Kidnapping charge, despite the paucity of evidence regarding that Kidnapping charge.

Resp't Ex. 212 at 9-10. The PCR court did not specifically address Petitioner's sufficiency-of-the-evidence claim.

Petitioner appealed and raised a single assignment of error that trial counsel was ineffective for advising Petitioner to plead guilty to Kidnapping in the First Degree when, as a matter of law, the facts of the case did not constitute kidnapping.

Resp't Ex. 214. The Oregon Court of Appeals summarily affirmed, and the Oregon Supreme Court denied review.  Resp't Exs. 218, 219.

## **DISCUSSION**

In this proceeding Petitioner is not challenging his conviction for Aggravated Murder in the Course of a Robbery. Instead Petitioner contends his conduct does not constitute Kidnapping under Oregon Revised Statute § 163.225, "in particular as that statute has been analyzed in decisions including *State v. Wolleat*, 338 Or. 469, 111 P.3d 131 (Or. 2005), and *State v. Zweigart*, 344 Or. 619, 188 P.3d 242 (Or. 2009)," and that his conviction should be vacated under "*Fiore v. White*, 531 U.S. 225 (2001) and its progeny."  Pet'r's Supp. Br. on Remand (ECF No. 89) at 1.  Petitioner argues "[i]t is a violation of Due Process to require [him] to spend any time in prison for conduct which is not a crime under Oregon law."  *Id.* at 14.

Respondent counters:  (1) Petitioner has not made a gateway showing of actual innocence to excuse the procedural default of his due process claim; (2) the state court's rejection of Petitioner's due process insufficiency-of-the-evidence claim is entitled to deference; (3) Petitioner's reliance on *Fiore* is misplaced because it does not apply in the guilty-plea context and is not equivalent to a freestanding claim of innocence; and

(4) "[a] claim of legal insufficiency based on an intervening change in the law falls far short of an affirmative proof of innocence that might give rise to a freestanding claim for relief under *Herrera*."  Resp't Resp. at 1-2; Resp't Sur-Reply (ECF No. 99) at 2-3.[3]

I.    **Scope of the Ninth Circuit's Memorandum Opinion**

Before proceeding to the merits of the parties' arguments, it is necessary to address the scope of the Ninth Circuit's Memorandum Opinion that addresses Petitioner's gateway showing of actual innocence.  Petitioner contends in addition to holding that Petitioner was not precluded from making a gateway showing of actual innocence, the Ninth Circuit (1) concluded he had already made a factual showing of actual innocence and (2) recognized a claim of actual innocence based on *Fiore*.  *See* Pet'r's Resp. to Resp't Sur-Reply (ECF No. 102) at 1-2, 4-6, 9. The Court concludes, however, that the scope of the Ninth Circuit's decision is more limited.

As the record reflects, this Court originally held Petitioner procedurally defaulted his available state remedies as to all but one claim for relief, and failed to make a gateway

---

[3] Respondent stipulates the only evidence that it intends to rely on to establish Petitioner committed the crime of Kidnapping is the state records filed in this proceeding and in *Davis v. Nooth*, Civ. No. 2:11-cv-01101-BR.  Jt. Status Report and Proposed Litigation Sch. (ECF No. 82) at 3; Resp't Resp. (ECF No. 94) at 2 n.2.

showing of actual innocence to excuse the default.  Findings and Recommendation (ECF No. 65) at 8; Order (ECF No. 69)(adopting the Findings and Recommendation). Even assuming Petitioner could prove he is actually innocent of kidnapping by virtue of the decision in *Wolleat*, this Court reasoned based on *Bousley v. United States*, 513 U.S. 298 (1995) that Petitioner's procedural default of available state remedies was not excused because he failed to demonstrate he is actually innocent of more serious charges dismissed by the State during plea negotiations. Findings and Recommendation at 12-14. Consequently, this Court did not proceed to the question whether Petitioner demonstrated it is more likely than not that no reasonable juror would have convicted him of kidnapping. *See Schlup v. Delo*, 513 U.S. 298 (1995)(setting forth standard of gateway showing of actual innocence sufficient to overcome procedural default).  This Court, nevertheless, issued a Certificate of Appealability on the issues whether Petitioner demonstrated cause and prejudice or actual innocence sufficient to overcome his procedural default and whether trial counsel rendered ineffective assistance of counsel as set forth in Ground for Relief One.  Order (ECF No. 69) at 2-3.

The Ninth Circuit reversed and concluded this Court "erred in holding that under *Bousley v. United States*, 523 U.S. 614, 623 (1998), Moon could not overcome procedural default under *Schlup*

14 - OPINION AND ORDER

*v. Delo*, 513 U.S. 298, 315 (1995), by showing that he is actually innocent of kidnaping [*sic*]." Mem. Op. at 1-2.[4] The Ninth Circuit reasoned: "Because the state did not forego its right to obtain the maximum sentence available for the charges brought against Moon as part of plea bargaining, Moon did not have to establish that he was actually innocent of other charges in order to raise his claim of actual innocence." *Id.* at 2-3.[5]

The Ninth Circuit remanded to allow "Moon [to] attempt to prove that he is actually innocent of kidnapping under *State v. Wolleat*, 111 P.3d 1131 (Or. 2005)," noting the state "is not limited to the existing record to rebut any showing that [Moon] might make." *Id.* at 3 (*citing Bousley*, 523 U.S. at 624). Thus, the Ninth Circuit did not hold, expressly or by implication, that (1) Petitioner had already made a sufficient factual showing of actual innocence under *Schlup* or (2) that *Fiore* recognized an

---

[4] The Ninth Circuit affirmed this Court's ruling that Petitioner's ineffective-assistance-of-counsel claim did not warrant habeas relief. *See* Mem. Op. at 3-4.

[5] The Ninth Circuit explained "[t]he state did not forego any additional sentence it could have obtained when it agreed to dismiss other aggravated murder charges in exchange for Moon pleading guilty to one count of aggravated murder, because only one sentence can be imposed for the aggravated murder charges under state law. After Moon breached his plea agreement, the state could have sought the maximum sentence of life without parole on Count 1, murder in the course of robbery," but did not do so. Mem. Op. at 2-3. There was "nothing in the record that would suggest [the state] sought a lesser sentence on the murder charge because it viewed the sentence for kidnapping as a vehicle for imposing additional punishment for the murder." *Id.*

actual innocence claim in the guilty-plea context.  Accordingly, this Court proceeds to those questions.

## II. <u>Gateway Showing of Actual Innocence - *Schlup*</u>

It is well-settled that a federal court may consider a procedurally defaulted habeas claim if the petitioner makes a sufficient showing of actual innocence; *i.e.*, that in light of all the evidence it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1933 (2013).  *See also Bousley*, 523 U.S. at 623-24; *Schlup*, 513 U.S. at 329.  "One way a petitioner can demonstrate actual innocence is to show in light of subsequent case law that he cannot, as a legal matter, have committed the alleged crime." *Vosgien v. Persson*, 742 F.3d 1131, 1134 (9th Cir. 2014).  *See also Gettling v. Premo*, 613 F. App'x 568, 569 (9th Cir. 2015).  A gateway showing of actual innocence may be established despite the fact that the petitioner entered a guilty plea.  *See Vosgien*, 742 F.3d at 1136-37.  *See also Bousley*, 523 U.S. at 624.  In light of the totality of the evidence and the applicable Oregon law, and for the reasons that follow, the Court concludes Petitioner has made a sufficient showing of actual innocence to overcome his procedural default.

### A.   <u>Applicable Oregon Law</u>

Oregon law provides a person commits the offense of Kidnapping in the Second Degree if he (1) takes the victim from

one place to another, (2) with the intent to interfere substantially with the victim's personal liberty, and (3) without consent or legal authority.  Or. Rev. Stat. § 163.225.  A person commits Kidnapping in the First Degree if he violates Oregon Revised Statute § 163.225 with the purpose of causing physical injury to the victim.  Or. Rev. Stat. § 163.235(1)(c).  The statute requires proof of both a physical act (movement from one place to another) and a mental state (the intent to interfere substantially with the victim's personal liberty).  *Wolleat*, 111 P.3d at 1133.

At the time of Petitioner's guilty plea, the Oregon Supreme Court had held there is no "separate crime of kidnapping where the detention or asportation of the victim is merely incidental to the accomplishment of another crime, particularly that of robbery or rape."  *State v. Garcia*, 605 P.2d 671, 675 (Or. 1980).  The Court, however, recognized a defendant "would be guilty of kidnapping . . . if in committing rape or robbery he took the victim a substantial distance or held the victim a substantial period of time."  *Id.* at 675 (internal quotations omitted).  The Court did "not provide any guidance on the minimum distance that a defendant must intend to move a victim . . . before the intended movement . . . will constitute substantial interference."  *Wolleat*, 111 P.3d at 1134.

The Oregon Supreme Court provided that guidance in *Wolleat*.
After examining the legislative history of Oregon's kidnapping
statutes, the Court held for the first time that "[m]oving a
victim from one room to another while committing another crime
does not constitute moving the victim a substantial distance."
*Id.* at 1135.  Consequently, "that movement is not sufficient, by
itself, to give rise to an *intent* to interfere substantially with
the victim's liberty to move freely."  *Id.*  The Court explained:

> The evidence, viewed in the light most favorable
> to the state, show that defendant moved the victim from
> the bedroom to the living room, approximately 15 to 20
> feet, while he assaulted her.  A reasonable juror could
> infer from that evidence that defendant intended to
> move the victim the distance that he did.  However, an
> intent to do only that would be insufficient to
> establish the mental element necessary to prove
> kidnapping, a reasonable juror would have to be able to
> infer that defendant intended either to move the victim
> a greater distance than he did or to transport her to a
> place of confinement.  As our recitation of the facts
> makes clear, no reasonable juror could draw that
> inference from this record.

*Id.* at 1135-36.

In *State v. Zweigart* the Oregon Supreme Court again
addressed the question whether there was sufficient evidence the
defendant intended to interfere substantially with the victim's
personal liberty.  188 P.3d at 251.  In that case, the defendant
conspired with another individual to stage a robbery of the
defendant's house and to kill his wife in the course of the
robbery.  The co-conspirator entered the victim's home, forced

the victim at gunpoint to walk downstairs from her bedroom to the living room, directed her to lie on the ground, held her at gunpoint, and then shot her moments later. *Id.* at 252. The Oregon Supreme Court reversed the defendant's conviction because the movement of the victim was incidental to the robbery and murder. *Id.* at 636.

The Oregon Court of Appeals reached similar conclusions in the following cases: *State v. Reyes-Mauro*, 175 P.3d 998, 1004-05 (Or. App. 2007)(movement of store patron from the front of the store to the back office was incidental to the robbery); *State v. Alvarez-Vega*, 172 P.3d 285, 285 (Or. App. 2007)(*per curiam*) (state conceded evidence that the defendant ordered victims of robberies to lie on the floor before he fled the scene was not sufficient to support kidnapping convictions); *State v. Douglas*, 125 P.3d 751, 754-55 (Or. App. 2005)(ordering tavern patrons to put their hands on the bar and ordering one victim to get money from the safe and cash register was incidental to the robbery).

In contrast, Oregon courts held there was sufficient evidence of an intent to interfere substantially with the victim's personal liberty under the following circumstances: (1) defendant broke into victim's home, pointed a gun at her, ordered her to stand against the wall, moved her six feet to her bed, handcuffed her hands behind her back, gagged her, moved her

to the floor, bound her ankles, and covered her head (*State v. Tuan Anh Nguyen*, 190 P.3d 462, 462-65 (Or. App. 2008)); (2) defendant moved the victim from her front doorway into her bedroom, took away her cell phone, stifled her screams, physically restrained her, pinned her down and choked her when she attempted to escape, and kept her confined for about an hour and a half (*State v. Mejia*, 227 P.3d 1139, 1145 (Or. 2010)); (3) defendant forced his way into victim's home, punched her, dragged her away from the front door, dragged her upstair, continued to beat her, tried to force her into a bathroom, shoved her to the ground and raped her, and put a glove in her mouth to stifle her screams (*State v. Washington*, 337 P.3d 859, 862, 865-66 (Or. App. 2014)).

    **B.    <u>Analysis</u>**

    Petitioner argues he has demonstrated his actual innocence under *Wolleat* because "[t]here is no evidence that [Petitioner] had any intent other than to rob, and then to kill, Mr. Olson, and no evidence that they moved Mr. Olson other than to accomplish the crimes of robbery and homicide." Pet'r's Suppl. Br. on Remand at 13. In his Reply brief he also asserts there was insufficient evidence to support the element of physical

movement; *i.e.*, that he moved Olson "from one place to another."
Or. Rev. Stat. § 163.225(1)(a).[6]

In response Respondent contends "[t]he evidence from the
trial of petitioner's co-defendant, Calvin Davis — in particular,
the evidence petitioner blindfolded Olson and held him for a
considerable length of time — is sufficient for a reasonable
juror to conclude that petitioner had the requisite intent to be
found guilty of kidnapping."  Resp't Resp. at 2, 11. Respondent
argues if "petitioner and Davis merely instructed Olson to lie
down while they robbed the house and then later killed him, they
would not have committed kidnapping."  *Id.* at 11-12 (citing
*Nguyen*, 190 P.3d 462, and *Washington*, 337 P.3d 859).  Respondent
reasons "there was no point to blindfolding Olson and holding him
there if petitioner and Davis intended to murder him anyway.  A
reasonable juror could have concluded that this was done solely

---

[6] The phrase "takes the [victim] from one place to another"
defines the physical act necessary to establish the offense.
*Wolleat*, 111 P.3d at 1133.  The physical act does not "require
that the distance be substantial."  *Id.*  When addressing this
element, Oregon courts consider the distance the victim is moved
and whether the movement served to limit the victim's freedom of
movement or increase the victim's isolation.  *See, e.g., State v.
Sierra*, 254 P.3d 149, 155 (Or. 2010); *State v. Walch*, 213 P.3d
1201, 1208 (Or. 2009); *State v. Opitz*, 301 P.3d 946, 951-54 (Or.
App. 2013); *Washington*, 337 P.3d at 863-65.  Hence, in *State v.
Ibabao*, 348 P.3d 336, 337 (Or. App. 2015), the movement of
victims in a home invasion from one room to another at gunpoint
did not support a kidnapping conviction "because the victims'
starting and ending places were not qualitatively different and
. . . were incidental to the robbery."

for the purpose of interfering with Olson's liberty, and could have convicted petitioner of Kidnapping." *Id.* at 12.

Based on the state court records presented in this proceeding (*see* Footnote 3), the only evidence concerning the movement of Olson during the course of the robbery is that he was forced to the ground near the front door as Petitioner and Davis rushed into the house. There is not any evidence that Olson was moved to another location. Jessica Rydman estimated they were in the house for one-half hour. Olson was blindfolded at some point during the course of the robbery. The totality of the evidence here shows facts akin to those in *Wolleat* and *Zweigart* where the movement of the victims was merely incidental to other crimes. Consistent with these cases, the Court concludes it is more likely than not that no reasonable juror would have found Petitioner acted with the intent to interfere substantially with Olson's liberty to move freely.

In particular, forcing Olson to the ground at gunpoint steps away from his front door does not constitute moving the victim a substantial distance and, therefore, does not give rise to an intent to interfere substantially with Olson's liberty to move freely. *See Wolleat*, 111 P.3d at 1135. *See also Zweigart*, 188 P.3d at 636. Nor does the additional act of blindfolding Olson and guarding him at gunpoint for approximately one-half hour support a reasonable inference that Petitioner intended to move

Olson a greater distance or to a place of confinement.  *Wolleat*, 111 P.3d at 1136.  Olson's starting place and ending place were not qualitatively different.  *See Ibabao*, 348 P.3d at 337.

On this record, the Court concludes Petitioner has made a gateway showing of actual innocence of Kidnapping sufficient to overcome his procedural default.

**III.  Claim Five:  Insufficiency of the Evidence and Actual Innocence**

Before proceeding to the merits of Petitioner's Fifth Claim for Relief, it is necessary to address the nature of the claim; *i.e.*, whether it is a due-process claim based on an intervening change of the law or a freestanding claim of actual innocence. In the Amended Petition the claim is captioned "Insufficient Evidence and Actual Innocence."  Pet'r's Am. Habeas Pet. at 14. Petitioner alleges "there was insufficient evidence to convict him of Count 12, kidnaping, under Oregon law, and he is actually innocent of that charge under Oregon law, as recognized by the post-conviction court." *Id.*

In his opening brief on remand Petitioner premises his claim on "*Fiore v. White*, 531 U.S. 225 (2001) and its progeny." Pet'r's Suppl. Br. on Remand at 1.  In his Reply brief Petitioner states he has pled an actual innocence claim that "incorporate[s] both an Insufficient Evidence and Actual Innocence claim." Pet'r's Reply at 3.  Petitioner argues "[b]oth the Supreme Court

and the Ninth Circuit have recognized the viability of a claim of actual innocence under the Due Process Clause based on an intervening change in the law." *Id.* at 8-9 (citing *Fiore*, 531 U.S. at 228. *See also Alaimalo v. United States*, 645 F.3d 1042, 1047 (9th Cir. 2011); *Vosgien*, 742 F.3d at 1135-36)).

Respondent, on the other hand, urges the Court to reject Petitioner's argument that a due-process violation under *Fiore* is the equivalent of a freestanding claim of innocence under *Herrera*.  Resp't Sur-Reply at 3,6.

A.   **Insufficiency of the Evidence**

In *Jackson v. Virginia*, 443 U.S. 307, 313-14 (1979), the Supreme Court held the Due Process Clause "protects an accused against conviction except upon evidence that is sufficient fairly to support a conclusion that every element of the crime has been established beyond a reasonable doubt."  The Court explained "a properly instructed jury may occasionally convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt," and such a conviction "cannot constitutionally stand." *Id.* at 317-18.

In *Fiore v. White* the Supreme Court extended the due-process requirement of proof beyond a reasonable doubt to a defendant who was convicted for conduct that the state criminal statute, as properly construed, did not prohibit.  531 U.S. at 228-29.  Fiore was convicted in state court of violating a Pennsylvania statute

24 - OPINION AND ORDER

prohibiting the operation of a hazardous-waste facility without a permit. *Id.* at 226. Although Fiore had a permit, he was convicted on the basis that he deviated so dramatically from the permit's terms that he violated the statute. *Id.* at 227. The Pennsylvania Supreme Court later held a proper interpretation of the statute after Fiore's conviction became final was that it did not extend to a person who had a permit but deviated from its terms. *Id.* at 227.

In light of this statutory interpretation and after concluding retroactivity was not an issue, the Supreme Court reversed Fiore's conviction because it violated the Due Process Clause:

> We have held that the Due Process Clause of the Fourteenth Amendment forbids a State to convict a person of a crime without *proving* the elements of that crime beyond a reasonable doubt. *See Jackson*, 443 U.S. at 316 . . . *In re Winship*, 397 U.S. 356 . . . . In this case, failure to possess a permit is a basic element of the crime of which Fiore was convicted. And the parties agree that the Commonwealth presented no evidence whatsoever to prove that basic element. To the contrary, the Commonwealth, conceding that Fiore did possess a permit . . . necessarily concedes that it did not prove he failed to possess one.

*Id.* at 228-29 (some citations omitted; emphasis added).

The Court notes extending *Fiore* to the guilty-plea context is problematic because "a guilty plea is an admission of all the elements of a formal criminal charge." *McCarthy v. United States*, 394 U.S. 459, 466 (1969). Moreover, the Due Process

Clause does not impose a duty on a state court to establish a factual basis for a guilty plea absent special circumstances. *Rodriguez v. Ricketts*, 777 F.2d 527, 528 (9th Cir. 1985). *See also Loftis v. Almager*, 704 F.3d 645, 648 (9th Cir. 2012). Hence several district courts have refused to extend *Fiore* to the guilty-plea context. *See Marr v. Stewart*, No. Co7-474-RAJ, 2008 WL 1927315, at *5 (W.D. Wash. Apr. 25, 2008). *See also Kirkland v. McNeil*, No. 10-22991-Civ-MORENO, 2011 WL 1595163, at *5 (S.D. Fla. Apr. 18, 2011); *Robbins v. Ryan*, No. 12-8056-PCT-GMS (JFM), 2013 WL 820459, at *23 & n.7 (D. Ariz. Feb. 11, 2013)(rejecting *Jackson* sufficiency of the evidence claim in guilty-plea context); *cf. Kleve v. Hill*, 243 F.3d 1149, 1151 (9th Cir. 2001) (concluding *Fiore* only reiterated the principle that a habeas petitioner is entitled to relief when the evidence fails to satisfy *Jackson v. Virginia*); *but see Hayman v. Pennsylvania*, 624 F. Supp. 2d 378, 385-86 (E.D.Penn. 2009)(applying *Fiore* in guilty-plea context to overturn plea that was based on facts that did not fall within prohibited conduct).

This Court finds this prevailing authority persuasive and concludes habeas relief is not warranted under *Fiore* on the basis that there is insufficient evidence to support a state prisoner's guilty plea in light of an intervening change in the law. This conclusion is buttressed by the fact that Petitioner's indictment

and guilty plea included all of the necessary elements of
Kidnapping.

Similarly, this Court concludes *Fiore* did not impliedly
create a due-process claim of actual innocence.  Petitioner's
reliance on *Alaimalo, Vosgien, and Bousley* (Pet'r's Reply to
Resp. at 9) does not dictate a contrary conclusion.  *Alaimalo*
addressed whether a federal prisoner had demonstrated actual
innocence for purposes of the "escape hatch" of 28 U.S.C. § 2255.
464 F.3d at 1048-49.  Both *Vosgien* and *Bousley* addressed the
gateway showing of actual innocence, which is not itself a
constitutional claim.  *See Vosgien*, 742 F.3d at 1134, 1137;
*Bousley*, 523 U.S. at 623-24.  In other words, none of the cases
recognized an actual innocence claim in the guilty-plea context
based on an intervening change in the law.

Accordingly, the Court turns to the question whether a
freestanding claim of actual innocence is a cognizable claim in a
federal habeas corpus proceeding under *Herrera* and its progeny
and, if so, whether Petitioner has met the high standard
necessary for such a claim.  *See Herrera*, 506 U.S. at 401
(distinguishing insufficiency-of-the-evidence claim from
freestanding claim of actual innocence); *cf. Gimenez v. Ochoa*,
821 F.3d 1136, 1145 (9th Cir. 2016)("decoupl[ing]" claim of
actual innocence from due-process violation).

**B.   <u>Freestanding Claim of Actual Innocence</u>**

It remains an open question whether a freestanding claim of actual innocence is cognizable in federal habeas corpus proceedings given the fact that "habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution- not to correct errors of fact." *Herrera*, 506 U.S. at 400.   *See also Gimenez*, 821 F.3d at 1145; *Jones v. Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014); *McQuiggin*, 133 S. Ct. at 1931.   The Ninth Circuit and Supreme Court, however, have repeatedly assumed such a claim is cognizable, opining that a habeas petitioner must "'go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent.'"   *Gimenez*, 821 F.3d at 1145 (quoting *Carriger v. Stewart*, 132 F.3d 463, 476 (9th Cir. 1997)).   *See also Jones*, 763 F.3d at 1246; *House v. Bell*, 547 U.S. 518, 555 (2006)(the sequence of the Court's decisions in *Herrera* and *Schlup* "implies at the least that *Herrera* requires more convincing proof of innocence than *Schlup*").[7]

---

[7] When applying this extraordinarily high standard, this Court declines to rely on the legal opinions or "prior admissions" expressed by Respondent's counsel or the state PCR Courts.   *See* Pet'r's Reply to Resp. (ECF No. 95) at 14-20; Pet'r's Resp. to Sur-Reply at 6-8.   *Cf. Hageman v. Hill*, 314 F. App'x 996, 997-98 (9th Cir. 2009)(judge's affidavit expressing doubt there was sufficient evidence of Petitioner's guilt presented at trial did not demonstrate factual innocence). Because Petitioner's freestanding actual innocence claim has not been adjudicated on the merits, this Court's review is not constrained by 28 U.S.C. § 2254(d).   *Jones*, 763 F.3d at 1243 n.1.

This Court concludes Petitioner's freestanding claim of actual innocence is cognizable and warrants federal habeas relief because Petitioner has demonstrated he is factually innocent of Kidnapping in light of an intervening change in the law. As noted, the evidence in the state-court records is that Petitioner rushed into Olson's house and moved Olson a few feet from the front door and to the ground at gunpoint. At some point Olson was blindfolded. The robbery lasted approximately one-half hour. Under Oregon law this evidence does not give rise to a reasonable inference of an intent to interfere substantially with the victim's liberty to move freely. *See Wolleat*, 111 P.3d at 1135. *See also Zweigart*, 188 P.3d at 636. Moreover, there is not any additional evidence in this record that Petitioner intended to move Olson a greater distance or to a place of confinement. *See Wolleat*, 111 P.3d at 1136. Olson's beginning and ending places were not qualitatively different. *See Ibabao*, 348 P.3d at 337. Petitioner's showing goes beyond mere insufficiency of the evidence (*see Bousley*, 523 U.S. at 623) and instead demonstrates his conduct does not constitute Kidnapping under Oregon law. *See Jaramillo v. Stewart*, 340 F.3d 877, 883 (9th Cir. 2003). For all of these reasons, the Court concludes Petitioner is factually innocent of Kidnapping.

The Court emphasizes its recognition of a freestanding claim of actual innocence is premised on the unique circumstances of

this case. First, Respondent has stipulated the only evidence on which the state relied to establish Petitioner's guilt are the state records filed in this proceeding. Second, Petitioner's showing of innocence is premised on an *intervening* change in state law. Third, recognition of a freestanding claim in this context does not substitute this Court's assessment of the facts for that of a jury and does not provide a windfall to Petitioner in terms of his plea negotiations because the State did not forego its right to obtain the maximum sentence available for the charges against Petitioner as part of the plea bargain. *See* Mem. Op. at 2. *See also Vosgien*, 742 F.3d at 1135-36.

Finally, the Court notes recognition of a freestanding claim in this case will not require the State to retry Petitioner based on stale evidence[8] because Respondent has stipulated that in the event habeas relief is granted, the appropriate relief is an unconditional writ vacating Petitioner's Kidnapping conviction. *See* Resp't Resp. at 17-18. This Court, therefore, need not decide whether a freestanding claim of actual innocence is appropriate absent these unique circumstances.

---

[8] *See Herrera*, 506 U.S. at 417 (showing of actual innocence is extraordinarily high due to "the enormous burden that having to retry cases based on often stale evidence would place on the States.").

**CONCLUSION**

For these reasons, the Court GRANTS Petitioner's Amended Habeas Corpus Petition (ECF No. 13) and VACATES Petitioner's conviction for Kidnapping in the First Degree entered in *State of Oregon v. Moon*, Multnomah Circuit Court Case No. 00-09-37205.

IT IS SO ORDERED.

DATED this 28th day of July, 2016.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge

31 - OPINION AND ORDER